OPINION
{¶ 1} Defendant-appellant, Donald Jordan, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of robbery, a felony of the third degree, and one count of abduction. Because the sufficiency of the evidence, as well as the weight of the evidence, supports the trial court's judgment, we affirm.
{¶ 2} By indictment filed August 15, 2002, defendant was charged with one count of robbery in violation of R.C. 2911.02, a felony of the second degree that alleged defendant caused the victim physical harm; one count of robbery in violation of R.C. 2911.02, a felony of the third degree that alleged defendant used force; one count of kidnapping in violation of R.C. 2905.01, that alleged defendant terrorized or inflicted serious physical harm on the victim; and one count of abduction in violation of R.C. 2905.02, that asserted defendant used force or threat, creating a risk of physical harm to the victim or placing her in fear.
{¶ 3} A jury trial on the charges began on October 28, 2002, and resulted in a not guilty verdict on the second-degree robbery and kidnapping charges, but a guilty verdict on the third-degree felony robbery and abduction charges. The trial court, by judgment entry filed January 13, 2003, sentenced defendant to four years on each count, to be served consecutively. By amended judgment entry filed on January 23, 2003, the court imposed four years on each count, to be served concurrently to each other but consecutively to the sentence on defendant's parole violation. Defendant appeals, and although his brief does not set forth assignments of error, he assigns issues, which we interpret to be, and refer to as, assignments of error:
I. The Jury Verdict and findings of guilt on the charge of F3 Robbery was [sic] against the manifest weight of the evidence because the facts show that there was no intent on the part of the Appellant to rob Helen and that his actions in driving off with Helen's purse was not intentional. After he learned that the purse was in his possession, Appellant sought to return Helen's purse.
II. The Jury Verdict and findings of guilt on the charge of F3 abduction was [sic] against the manifest weight of the evidence because the facts show that Appellant's actions in restraining Helen were meant to prevent injury to her and damage to his vehicle.
III. The evidence presented to the jury was insufficient to convict Appellant of the crime of Robbery and Abduction.
{¶ 4} Because defendant's assignments of error are interrelated, we address them jointly. Together they assert the sufficiency and weight of the evidence do not support the trial court's judgment finding defendant guilty of robbery and abduction. To the extent defendant challenges his conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 260, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
{¶ 5} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"); Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
{¶ 6} According to the state's evidence, on the date of the incident giving rise to the charges at issue, Helen Bingham had known defendant for approximately 17 years; he is the father of her three children. He lived with her on and off during that time, but he moved out of her house in January 2002.
{¶ 7} On June 18, 2002, defendant came to Bingham's house, they went to BW-3's, and he spent the night at her home. He asked to borrow $300, and Bingham agreed to loan him the money. The funds were to come from a $1,500 deposit she had placed at the House of Frederick on a television. Defendant agreed to take Bingham there to retrieve the money, and she was to give him $300 of it.
{¶ 8} On June 19, 2002, defendant drove Bingham to the House of Frederick in his truck. She was able to retrieve the entire deposit, and they drove off. At that point, Bingham told defendant she would not loan him the money. Defendant was driving, and according to Bingham, he "hit the steering wheel and started going off." (Tr. 19.) Defendant asked why, and Bingham told him she needed to replace items he had taken from her house. Defendant unquestionably was angry, and they were both arguing back and forth when defendant snatched Bingham's purse that contained the returned money. She tried to retrieve it, but defendant attempted to stop her from reaching it. They ended up fighting in the truck, hitting each other.
{¶ 9} Bingham could not reach the purse because defendant had it between his legs on the floor of the vehicle. Apparently due to the fighting, defendant pulled over at some apartments. Bingham jumped out, ran to an apartment door, and began banging on the door. Defendant came up from behind her, picked her up, and took her back to the truck; they were fighting as they went. Defendant put her into the truck, and she tried unsuccessfully to escape. A man was walking by, and Bingham yelled to him to call the police. Defendant then slammed the door and drove away.
{¶ 10} The man, William Moore, was the assistant property manager for the West of Eastland Apartments. He saw the vehicle, as well as the commotion both inside and outside the vehicle. He heard a woman "screaming to give her purse back," and he also heard defendant yell, "you know I have a gun." (Tr. 66.) Moore observed that within a few moments, defendant put Bingham back into the car. They went about 10 to 15 feet, when Moore heard the car being thrown into "park," and "it stripped the gears stripped very loud." Id. Still struggling in the vehicle, defendant and Bingham went a few more feet, and the same thing occurred. Moore saw defendant strike her and then drive out of the apartment complex.
{¶ 11} Bingham again was able to jump out of the truck, and this time she ran into a home on Glenbrook that had an open door. She called the police, and a field training officer in the patrol division of the Columbus Police Department responded. He observed that Bingham was upset, had a little abrasion on her forehead, was crying, and was jittery. The medics were called.
{¶ 12} Ultimately Ron Strollo, a Columbus police officer assigned to the robbery unit of the detective bureau, investigated the incident. According to Strollo, defendant admitted he was with Bingham on the date of the incident, admitted to arguing with her, and admitted he had to restrain her at one point because she was kicking the car and damaging the window wiper.
{¶ 13} Defendant also admitted he was in possession of Bingham's purse at one time. Specifically, he possessed it for two weeks after the incident and then gave it to his attorney. Defendant discovered he had the purse two-to-three hours after the incident, when Bingham paged him. On the advice of counsel, defendant did not turn it over immediately to Bingham, because so much friction existed between defendant and the victim. Instead, defendant asked his attorney to return the purse to the victim. Defendant said he did not go through the purse. Although Bingham's testimony was unclear about how much money was gone from her purse, she told defendant's attorney that some of the retrieved money was missing.
{¶ 14} R.C. 2911.02 states:
(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
* * *
(3) Use or threaten the immediate use of force against another.
{¶ 15} Pursuant to R.C. 2911.02(C)(2) "theft offense" has the same meaning as in R.C. 2913.01, which in turn defines theft as a violation of, among other sections, R.C. 2913.02. Under R.C. 2913.02, theft is proscribed as follows:
(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
(1) Without the consent of the owner or person authorized to give consent;
* * *
(4) By threat[.]
{¶ 16} Construed in the state's favor, the evidence shows that defendant deprived Bingham of her purse with the $1,500 in it. Despite her attempts to regain possession of the purse, defendant refused and instead yelled at Bingham, threatened her, and hit her. Indeed, Bingham testified to an abrasion on her forehead and a swollen jaw as a result of defendant's use of force in preventing her from retrieving her purse. The evidence is sufficient to support the conviction.
{¶ 17} Indeed, defendant admits that if "the [defendant] and [Bingham] had been strangers or mere acquaintances it is conceded that this would have been a definite case of robbery because all of the elements of the offense were met." (Appellant's Brief, 8.) Apparently relying on the evidence produced in cross-examination of the state's witnesses, defendant contends he did not intend to rob Bingham.
{¶ 18} Contrary to defendant's contentions, even when the evidence is weighed in a limited fashion, the weight of the evidence supports the conviction. Defendant is correct in asserting that Officer Strollo, during cross-examination, testified defendant told him he had no intention of keeping Bingham's purse and wanted to return it, but, on the advice of counsel, he could not because of the bad relations between Bingham and himself. Moreover, by way of cross-examination, defendant was able to show that, to Bingham's apparent frustration, defendant had fathered a child with Joann Watkins. Defendant thus attempted to show that Bingham's testimony against defendant was simply her opportunity to seek retribution for defendant's liaison with another woman.
{¶ 19} The testimony elicited through cross-examination of Bingham and Strollo offered the jury a different interpretation of the facts the state presented. Similarly, the testimony about Joann Watkins gave the jury the opportunity to question the motive behind Bingham's testimony. Resolution of those credibility issues, however, remained with the jury. DeHass, supra. Here, the jury apparently resolved the credibility issues in favor of Bingham and the state. The existence of conflicting or impeached testimony does not render the verdict against the manifest weight of the evidence. The evidence supporting the jury's verdict was not so unbelievable as to render the verdict against the manifest weight of the evidence. State v. Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639.
{¶ 20} Defendant also was convicted of abduction in violation of R.C. 2905.02, which states:
(A) No person, without privilege to do so, shall knowingly do any of the following:
(1) By force or threat, remove another from the place where the other person is found;
(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]
{¶ 21} Construed in favor of the state, the evidence here shows that defendant grabbed Bingham at the door of an apartment in the West of Eastland apartment complex, took her back to defendant's truck against her will, and forced her inside the vehicle. In doing so, defendant not only restrained her freedom, but returned her to a situation where she had sustained his striking and kicking her. Accordingly, the sufficiency of the evidence supports the conviction.
{¶ 22} Defendant also admits that "if [he] and Helen had not been in a previous relationship and not spent the night before together and had not gone out with each other that morning, the act of physically restraining her and placing her in his truck as Helen described would certainly constitute abduction." (Appellant's Brief, 9.) Defendant contends, however, that given the relationship between the parties, the convictions are inappropriate. Again, defendant apparently contends the relationship between the parties negates the requisite intent.
{¶ 23} The jury could have chosen to believe defendant's version of the events, including the suggestion that he did not intend to abduct Bingham, but only to keep her from kicking his truck and damaging the windshield wiper during the incident giving rise to the charges for which defendant was convicted. The jury did not; it again resolved the matter in favor of the state.
{¶ 24} We note, however, that in assessing credibility, the jury found the state's evidence unpersuasive regarding the second-degree felony robbery and the kidnapping charge. Under the circumstances of this case, we would be hard-pressed to conclude the jury lost its way in sorting through the evidence relative to the robbery and abduction counts for which defendant was convicted, when it was able to reject two other counts the state presented. See State v. Garrison (Nov. 14, 1997), Greene App. No. 96-CA-122.
{¶ 25} In the final analysis, the sufficiency and weight of the evidence support the convictions. We therefore overrule defendant's three assignments of error and affirm the judgment of the trial court.
 Judgment affirmed.